

# In the Missouri Court of Appeals
# Eastern District
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112755 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | Honorable Annette Llewellyn |
| SHYHEIM EL-MUMIN, | ) | |
| | ) | |
| Appellant. | ) | Filed: September 23, 2025 |

Defendant Shyheim El-Mumin appeals the trial court's judgment entered on a jury verdict finding him guilty of two counts of first-degree assault, two counts of armed criminal action, one count of unlawful use of a weapon, and one count of first-degree property damage. The trial court sentenced Defendant as a persistent offender to a total of seventeen years' imprisonment.[1] Defendant asserts three points of alleged trial court error. He first challenges the trial court's admission of testimony from a firearm examiner. Defendant then alleges the trial court severally erred in finding that he was a persistent offender.

---

[1] Specifically, the trial court sentenced Defendant to a twelve-year term of imprisonment on each of the two first-degree assault counts (Counts I and III). On the corresponding armed criminal action counts (Counts II and IV), the trial court sentenced Defendant to a five-year term of imprisonment on each count. The trial court sentenced Defendant to a fifteen-year term of imprisonment on the unlawful use of a weapon count (Count V), noting that in keeping with the statutory guidelines of Section 571.030, the fifteen-year sentence would be without probation or parole. Lastly, the trial court sentenced Defendant to a seven-year term of imprisonment on the property damage count (Count VII). The trial court ordered the sentences for the assault, unlawful use of a weapon, and property damage counts (Counts I, III, V, and VII) to run concurrent to each other. As to the two armed criminal action counts (Counts II and IV) the trial court ordered that the sentences run concurrent to each other but consecutive to the assault counts (Counts I and III). Count VI, unlawful possession of a firearm, was severed prior to trial.

***Factual and Procedural Background***

The charges in this case stem from a shooting at a Taco Bell drive-through in St. Louis. Around midnight on June 27, 2023, a couple drove to a Taco Bell and pulled into the drive-through to order food. They saw a red car facing the wrong direction in the drive-through. The car sat there, facing them, for a short time before slowly backing up. The car then slowly moved forward, and the couple heard gunshots and saw the flash of a gun. The couple ducked down in their car and called 911. Once they realized the other car had pulled away, they left the Taco Bell and drove home. They observed gunshot damage to their car. Police arrived in response to the couple's 911 call, took the couple's statements, and photographed the three bullet holes in the couple's car. Based on the couple's statements, an officer canvassed the Taco Bell parking lot and located a shell casing on the ground next to the menu board in the drive-through lane.

About two hours after the shooting at Taco Bell, Defendant was stopped for a traffic violation by a patrol officer in Granite City, Illinois. Defendant was driving a red car that was missing its bumper. The vehicle was registered to Defendant and had a license plate mounted in the rearview window with the number DR30553. The officer asked Defendant to exit the vehicle. As Defendant did so, the officer noticed a spent shell casing on the driver's side floorboard. Defendant later told the officer that he had a gun in the car. The officer searched Defendant's car and found a gun. The gun had an extended magazine containing twenty-four rounds; there was also a round in the chamber. There were six to eight rounds missing from the magazine. The officer located four spent shell casings scattered throughout the vehicle.

Detectives investigating the Taco Bell shooting pulled footage from cameras surrounding the crime scene. That surveillance footage showed a red car with no rear bumper pull into the Taco Bell drive-through the wrong way and stop near the menu board around the time of the couple's

911 call. The red car eventually backed up, then drove forward into an alley. The city's Real Time Crime Center cameras showed the bumperless red car turn left out of the alley and pass through a nearby intersection. The car had an Illinois license plate with number DR30553 – the same license plate number as on Defendant's car. Detectives entered this information in a reporting system and quickly received a call from the Sheriff's Department in Madison County, Illinois, that they had stopped the suspect vehicle and had Defendant in custody from the traffic stop. Detectives interviewed Defendant, who denied involvement in the shooting and claimed the couple was lying. The State later charged Defendant and the case proceeded to a jury trial.

The issues on appeal are the admission of testimony by the firearm examiner and the trial court's persistent-offender finding. We thus set out facts specific to these issues.

Defendant challenges the admission of the testimony and records of a forensic scientist from the firearms and toolmark section of the Illinois State Police Metro East Forensic Science Laboratory ["Firearm Examiner"]. Firearm Examiner examined the gun and shell casings seized from Defendant's car along with a shell casing recovered from the Taco Bell parking lot. Firearm Examiner concluded that all five of the shell casings had been fired from Defendant's gun. On the morning of trial, Defendant filed a motion *in limine* to "limit any toolmark testimony in this case and the subsequent conclusions of the toolmark examiner." Defendant argued Firearm Examiner's testimony should be limited because it was not sufficiently scientific. The trial court reserved ruling on the motion and took the issue and the motion with the trial. Further facts regarding Defendant's trial objections to Firearm Examiner's reports are included in our discussion below, where we conclude that Defendant not only failed to preserve this issue for appellate review but also waived the claim.

3

As to the trial court's finding that Defendant was a persistent offender, the indictment alleged that Defendant was a persistent offender subject to an extended term of imprisonment because Defendant had been convicted of two or more felonies committed at different times. The State alleged that Defendant pleaded guilty to felony possession of a controlled substance on December 3, 2012, in Cole County, Missouri, and that he pleaded guilty to the felony of Violence or Injury to an Employee of the Department of Corrections in St. Francois County, Missouri, on December 16, 2011.

Prior to trial, the State filed a motion for findings of fact pursuant to Section 558.021, in which the State asked the court to take judicial notice of records of two of Defendant's prior convictions, which differed from the ones alleged in the indictment. First, the State asked the trial court to take judicial notice of Defendant's conviction for second-degree robbery, which was entered by the St. Louis City circuit court on June 20, 1994, for conduct alleged to have occurred on or about February 17, 1993. Second, the State alleged that Defendant was found guilty of first-degree robbery on May 20, 2000, in St. Louis City, for conduct that occurred on or about September 30, 1999. Exhibits attached to the motion consisted of Case.net docket sheets for the felony convictions identified in the motion.

The trial court took up the State's motion on the first day of trial, before jury selection. The following exchange took place:

THE COURT: I have a motion for a finding pursuant to Section 558.021, and proposed order. This motion is regarding a prior and persistent offender finding.

[Defense counsel], anything on this motion?

[DEFENSE
COUNSEL]: No, Your Honor.

4

| | |
|---|---|
| THE COURT: | All right. So, does [Defendant] agree that he has these two prior convictions, one from June 20th of 1994, for the offense of robbery in the second degree, which occurred on February 17th in 1993, and also, May 20th 2000, a guilty plea on robbery in the first degree for conduct that occurred on September 30th, 1999, and that at that time, he was represented by counsel on both cases, and also at the time, his former name was [J.I.L]? Would you agree to that, [Defense counsel]? |
| [DEFENSE COUNSEL]: | He does, Your Honor |

The trial court then announced that it "will find that [Defendant] is a prior and persistent offender pursuant to Section 558.016." The trial court also issued a written order, which stated that the court was taking judicial notice of the prior findings of guilt identified in the State's motion and found beyond a reasonable doubt that Defendant was a "persistent felony offender" as defined in Section 558.021. Defendant did not object.

At Defendant's sentencing, defense counsel in acknowledging Defendant's persistent status noted that, due to Defendant's "prior and persistent offender status," the minimum sentence for his conviction for unlawful use of a weapon would be fifteen years before he became eligible for probation or parole. For that count, the trial court sentenced Defendant to imprisonment for 15 years, noting that, "in keeping with the statutory guidelines, section 571.030, the [sic] subsection nine, that fifteen years will be without probation or parole." At no point during the proceedings did Defendant object to the court's persistent-offender finding or to being sentenced as a persistent offender.

### *Standard of Review*

For the reasons stated in the discussion of Defendant's points below, Defendant did not preserve his three points on appeal for appellate review and thus those points are subject to plain error review only. Generally, appellate courts do not review unpreserved claims of error. *State v.*

*Brandolese*, 601 S.W.3d 519, 525 (Mo. banc 2020). Rule 30.20, however, provides that "plain errors affecting substantial rights may be considered in the discretion of the court ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20; *Brandolese*, 601 S.W.3d at 526. "Rule 30.20 is the exclusive means by which an appellant can seek review of *any* unpreserved claim of error and said claim – no matter if it is statutory, constitutional, structural, or of some other origin – is evaluated by this Court's plain error framework without exception." *Brandolese*, 601 S.W.3d at 530.

Plain error review is a two-step process. *State v. Vitale*, 688 S.W.3d 740, 746 (Mo. App. E.D. 2024). First, the Court must determine whether the claimed error is, in fact, plain error affecting substantial rights." *State v. Vandergrift*, 669 S.W.3d 282, 296 (Mo. banc 2023) (quoting *State v. Johnson*, 524 S.W.3d 505, 513 (Mo. banc 2017)). "Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" *Brandolese*, 601 S.W.3d at 526; *Vitale*, 688 S.W.3d at 746. Plain error is error that is "evident, obvious, and clear." *Vandergrift*, 669 S.W.3d at 296 (internal quotation omitted). "Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected." *Id.*

Only if plain error affecting substantial rights is found under step one may we proceed to the second step to determine whether the error actually resulted in manifest injustice or a miscarriage of justice. *Vitale*, 688 S.W.3d at 746; *Vandergrift*, 669 S.W.3d at 296 (internal quotation omitted). To be entitled to relief under the plain error rule, an appellant must go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights. *Vandergrift*, 669 S.W.3d at 296 (internal quotation omitted). In Missouri, plain error merits

6

relief "only if the error was outcome determinative." *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006).

### Point I: Testimony

For his first point on appeal, Defendant alleges the trial court erred and abused its discretion in overruling his objection to Firearm Examiner's testimony "following a motion *in limine* to limit his testimony" because admission of the testimony violated Section 490.065 and his constitutional rights to due process and a fair trial because the testimony "was not shown to be scientific knowledge." Defendant in his brief on appeal argues that Firearm Examiner's conclusions were not the product of a scientific method and that Firearm Examiner's testimony did not meet the criteria for being "scientific knowledge" within the meaning of Section 490.065.2 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). He contends the trial court erred by failing to act as a gatekeeper to ensure that Firearm Examiner's testimony was reliable.

Contrary to Defendant's assertions, a full review of the record and transcript shows Defendant failed to preserve this allegation of error for appellate review. Defendant filed a motion *in limine* prior to trial to "limit any toolmark testimony in this case and the subsequent conclusions of the toolmark examiner." Defendant argued Firearm Examiner's testimony should be limited because it was not sufficiently scientific. The trial court reserved ruling on the motion and took the issue and the motion with the trial. Defendant also filed a separate motion for sanctions seeking exclusion of the firearms examiner's reports and other materials due to a purported discovery violation. The trial court granted the motion for sanctions to give Defendant a continuance but denied any other remedies.

Though Defendant filed a motion *in limine*, a motion *in limine*, by itself, preserves nothing for appeal because any ruling on such a motion is considered interlocutory in nature and is subject

7

to change during the trial.  *State v. Scherrer*, 673 S.W.3d 899, 915 (Mo. App. E.D. 2023).  In order to preserve a challenge to the admission of evidence for appellate review based on a motion *in limine*, the objecting party must make a specific objection at the time of the attempted admission of the evidence.  *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992); *State v. Minner*, 311 S.W.3d 313, 318 (Mo. App. W.D. 2010); *State v. Gant*, 708 S.W.3d 899, 905 (Mo. App. W.D. 2025).  "Only an objection made timely *at trial* will preserve an issue for appeal." *Scherrer*, 673 S.W.3d at 915 (internal quotation omitted).

Firearm Examiner began his testimony, explaining his qualifications and the basis of his examination, without objection.  Defense counsel first objected when the State began to question Firearm Examiner regarding State Exhibit 53, one of Firearm Examiner's reports.  Defense counsel lodged an objection to the offering, discussion, and admission of Firearm Examiner's reports, arguing:

> They are the result of a ranked discovery violation cited to a motion that I had requested sanctions for.  I also believe they were fruits of the poisonous tree.
> The ballistics have been obtained during what I think was an unlawful search and seizure of [Defendant's] car, and I think that it was a violation of his Fourth, Sixth and Fourteenth Amendment rights under the Constitution of the United States of America.

The trial court overruled the objection and stated that it "did not believe [Firearm Examiner] had been offered as an expert" and that they were "just going through his testimony."  Defense counsel then stated:

> And I'll reserve my, I guess, to approach regarding my motion *in limine* as to limiting his – I guess – his testimony, because I'm not sure what he's going to testify to.

The court responded: "And I haven't heard anything yet that's objectionable, as far as it pertains to your motion.  Counsel responded: "I agree."  Counsel later requested that his "last objection" be continuing.  The trial court granted counsel's request.  Given that the only objection lodged was

based on a purported discovery violation and a claimed unlawful search and seizure, the continuing objection granted by the trial court necessarily must be based on these grounds, not the grounds set out in Defendant's motion *in limine*, which he said he would reserve and ask to approach when appropriate.

Firearm Examiner continued his testimony, again without objections. The State then offered State's Exhibits 51 and 53, Firearm Examiner's reports, into evidence. Defense counsel stated:

> My motion *in limine* concerned the extent to which the expert should be able to testify concerning his findings and results, and specifically I had asked the court to consider limiting that testimony to keep the expert from testifying that – to any degree of scientific certainty he can say that the gun fired those shots to the exclusion of any other firearm.

The trial court responded, asking: "So are you objecting to Exhibits 51 and 53?" Defense counsel answered: "No." The trial court clarified: "Is there anything in 51 or 53 that says anything about scientific certainty?" Defense counsel answered: "No." The trial court further clarified, asking: "All right. Let me be clear. I'm asking, is there anything in the written report that we're about to admit that said anything about scientific certainty?" Defense counsel answered: "Nothing different than his testimony." The trial court then asked: "Other than my previous ruling, any objections to Exhibits 51 and 53?" Defense counsel answered: "No further objections." The trial court admitted the two exhibits into evidence.

Though Defendant objected on grounds that the reports were the result of a discovery violation and an improper search and seizure, the transcript shows that Defendant lodged no objection at trial based on the grounds now asserted on appeal – that the reports were not sufficiently scientific.[2] The objection at trial must be specific, and on appeal, the same grounds

---

[2] Defendant concedes Missouri law allows ballistic experts to testify. Further, the testimony Defendant sought to limit was neither testified to nor included in the Firearm Examiner's reports.

9

must be relied upon. *Scherrer*, 673 S.W. 3d at 915 n.4; *State v. Tisius*, 362 S.W.3d 398, 405 (Mo. banc 2012). Because Defendant did not object at trial on the same grounds relied upon on appeal, his point is not preserved. *Scherrer*, 673 S.W. 3d at 915.

Even if Defendant had objected at trial on the grounds relied upon in his motion *in limine* and now on appeal, his point is still not preserved because Defendant did not assert these grounds in his motion for new trial. To preserve an allegation of error for appellate review, an appellant must first object at trial and then present the specific allegation of error to the trial court in a motion for new trial. *State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016); *State v. Nickels*, 598 S.W.3d 626, 633 (Mo. App. E.D. 2020). Further, the claim in the motion for new trial must be the same as the claim raised at trial and the claim raised on appeal. *Nickels*, 598 S.W.3d at 633. Defendant filed a motion for new trial and alleged error in the admission of Firearm Examiner's reports. However, the grounds asserted in his motion for new trial are not consistent with the grounds now raised on appeal. Defendant in his motion for new trial claimed the Firearm Examiner's reports should have been excluded because they were not timely disclosed. At no time did Defendant argue what he now argues on appeal - that Firearm Examiner's testimony should have been limited because it was not sufficiently scientific. "An allegation of error in a motion for new trial may not be changed or broadened on appeal...." *State v. Howery*, 427 S.W.3d 236, 248 (Mo. App. E.D. 2014). Because Defendant's motion for new trial incorrectly directed the trial court to a ruling based on purported discovery violations and a claimed illegal search and seizure, Defendant did not provide the trial court the opportunity to correct any mistake it may have made at trial on the basis that Firearm Examiner's testimony and reports were not sufficiently scientific. Consequently, Defendant's point is not preserved for appellate review. *Id*.

10

Defendant's unpreserved point on appeal is subject to plain error review only. Rule 30.20; *Brandolese*, 601 S.W.3d at 530. Defendant has requested plain error review in the event this Court finds his claim is not preserved. However, we decline to engage in that review. The record not only confirms that Defendant failed to preserve his claim on appeal, it shows that Defendant waived the claim. "Plain error review applies when no objection is made due to inadvertence or negligence." *State v. Jackson-Bey*, 690 S.W.3d 181, 187 (Mo. banc 2024) (internal quotation omitted). "Plain error review is waived when counsel has affirmatively acted in a manner precluding a finding that the failure to object was a product of inadvertence or negligence." *Id.* Further, Missouri courts recognize that a trial court does not commit plain error for failing to take action and prohibit the introduction of evidence when the record clearly indicates that trial counsel strategically chose not to object to the evidence. *State v. Gonzalez*, 671 S.W.3d 846, 850 (Mo. App. E.D. 2023); *see also State v. D.W.N.*, 290 S.W.3d 814, 825 (Mo. App. W.D. 2009) (finding trial court did not commit plain error for failing to prohibit testimony when the record showed defendant's counsel strategically chose not to object and allowed the evidence to be admitted). Even if we took counsel's statement as an objection, counsel acknowledged there was nothing in Exhibits 51 or 53 regarding scientific certainty and stated no objection to the admission of the exhibits.

The record does not show that Defendant's failure to object was the result of inadvertence or negligence. Instead, the record shows that defense counsel made a conscious choice not to object to Firearm Examiner's testimony and reports based on the alleged unreliability of toolmark analysis – or in other words on grounds that the testimony and reports were not sufficiently scientific. Defense counsel first reserved objecting on the grounds stated in his motion *in limine*, agreeing with the trial court that he had not yet heard anything that was objectionable, as far as it

11

pertained to the motion *in limine* and would seek to approach later. Later, when the State offered State's Exhibits 51 and 53 into evidence, defense counsel noted his motion *in limine* but then twice stated he was not objecting to the admission of Firearm Examiner's reports. He did so despite his obvious awareness of the argument raised in his motion *in limine*. When asked by the trial court if there was anything in the reports about scientific certainty, he acknowledged the reports did not speak to scientific certainty, which was the testimony he sought to limit by his motion. Counsel used the alleged deficiencies and weaknesses of Firearm Examiner's findings and results during cross examination and closing argument. Defendant cannot seek plain error review arising from this failed tactical and strategic decision. *State v. Turner*, 242 S.W.3d 770, 779 (Mo. App. S.D. 2008).

Defendant waived plain error review. *State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009) ("Plain error review does not apply when a party affirmatively states that it has no objection to evidence an opposing party is attempting to introduce or for a trial strategy reason."); *State v. Hughes*, 563 S.W.3d 119, 125 (Mo. banc 2018) ("If a defendant not only fails to object but also states 'no objection' or stipulates to the admission of otherwise objectionable evidence, the defendant affirmatively waives any error in its admission, plain or otherwise.").

We deny Point I.

### Points II & III: Persistent Offender Finding

In his final two points on appeal, Defendant alleges the trial court erred in finding that he was a persistent offender. Section 558.016 authorizes the trial court to sentence a person to an extended term of imprisonment if the defendant is a persistent offender. Section 558.016.1(1) (eff. Jan. 1, 2017). Section 558.016 defines a "persistent offender" as "one who has been found guilty of two or more felonies committed at different times." Section 558.016.3 (eff. Jan. 1, 2017).

12

Here the trial court found Defendant was a persistent offender based on Defendant's admission that he had two prior convictions: one from June 20, 1994, for second-degree robbery that occurred on February 17, 1993, and one from May 20, 2000, when Defendant pleaded guilty to first-degree robbery that occurred on September 30, 1999. In sentencing Defendant on the unlawful use of a weapon count (Count V), the trial court imposed the required maximum sentence of fifteen years' imprisonment. Section 571.030.9. The trial court then enhanced the sentence by making the sentence without the possibility of probation or parole. Without this enhancement, Defendant would be parole eligible on this count.

Defendant first alleges the trial court plainly erred in finding *sua sponte* that Defendant's prior convictions were committed at different times. Defendant argues that under the recent decision of the Supreme Court of the United States, *Erlinger v. United States*, 602 U.S. 821 (2024), a jury – not the trial court – was required to find the fact that multiple offenses were committed at different times before he could be sentenced as a persistent offender. Defendant, in his brief to this Court, concedes he did not preserve this allegation of error for appellate review. Defendant did not raise this issue in the trial court.[3] Review is for plain error. Rule 30.20; *Brandolese*, 601 S.W.3d at 530.

---

[3] At oral arguments before this Court, Defendant argued the issue was preserved because *Erlinger* was decided after his case was on appeal and thus, in raising this constitutional issue for the first time on appeal, he was raising this issue at the first opportunity. Though *Erlinger* was issued after Defendant was sentenced but prior to his case being final, *Erlinger* did not change the law; it merely reiterated the consistent holdings of the Supreme Court of the United States that the Constitution requires a jury to resolve any fact which extends a defendant's range of punishment. *See Erlinger*, 602 U.S. at 834; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Alleyne v. United States*, 570 U.S. 99, 117 (2013). Missouri courts have applied the precedent set forth in *Apprendi* and *Alleyne*. *See State v. Wood*, 580 S.W.3d 566, 583 (Mo. banc 2019); *State v. Johnson*, 524 S.W.3d 505, 512-13 (Mo. banc 2017). Because the law that a jury must be the fact-finder to determine whether to extend a term of punishment existed at the time of Defendant's trial, an objection could have been made. It was not. Even if an objection had been lodged, and this matter properly preserved, the result here would be the same given Defendant's admission and *Erlinger's* acknowledgement that a defendant can admit to the facts required to increase the prescribed range of penalties.

In *Erlinger*, the defendant Mr. Erlinger was charged with being a felon unlawfully in possession of a firearm. *Erlinger*, 602 U.S. at 825. At the time, a conviction for that offense ordinarily carried a sentence of up to ten years in prison. *Id*. at 825. But the government also charged Mr. Erlinger under the Armed Career Criminal Act (ACCA). *Id.* Under that statute, a defendant, such as Mr. Erlinger, who is found guilty of being a felon unlawfully in possession of a fireman in violation of Section 18 U.S.C. Section 922(g) can face a more severe punishment. *Id*. "If the defendant has three prior convictions for 'violent felon[ies]' or 'serious drug offense[s]' that were 'committed on occasions different from one another,'" the ACCA increases the prison term to a minimum of fifteen years and a maximum of a life sentence. *Id*. (quoting 18 U.S.C. Section 924(e)(1) (2012 ed.)). The district court found it more likely than not that that Mr. Erlinger's past included three ACCA-qualifying offenses committed on three different occasions and imposed a fifteen-year sentence. *Id*. at 826. On appeal, Mr. Erlinger argued that his prior offenses had occurred during a single criminal episode committed within a span of days, rather than on separate occasions, and that the Fifth and Sixth Amendments entitled him to have a jury assess the facts and decide whether his prior offenses occurred on different occasions. *Id*. at 827. After the Seventh Circuit declined to disturb the district court's sentence the Supreme Court of the United States granted certiorari to decide whether ACCA's occasions inquiry must be resolved by a jury. *Id*. at 827-28. The Supreme Court of the United States held that the Fifth and Sixth Amendments require a unanimous jury to make the determination beyond a reasonable doubt that a defendant's past offenses were committed on separate occasions for ACCA purposes. *Id*. at 849.

Both Defendant and the State argue that *Erlinger* applies retroactively to this case. Defendant was sentenced on June 14, 2024. The Supreme Court of the United States issued *Erlinger* one week later, on June 21, 2024. Defendant's case was not yet final, as he was on direct

14

appeal. A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review. *Griffith v. Kentucky*, 479 U.S. 3214, 328 (1987).

However, though *Erlinger* arguably applies in this case, this does not mean that relief is forthcoming for Defendant. While the Supreme Court of the United States noted that "virtually any fact that increases the prescribed range of penalties to which a criminal defendant is exposed must be resolved by a unanimous jury beyond a reasonable doubt," the Supreme Court also acknowledged as an exception that such facts could be "freely admitted in a guilty plea." *Erlinger*, 602 U.S. at 834. In a guilty plea, a defendant admits to the elements of the crime for which the defendant is charged. Such admission relieves the State of its burden to prove a submissible case. During the inquiry here under Section 558.021, Defendant's attorney acknowledged, and thereby admitted on behalf of his client, that Defendant was convicted of two prior felonies that were committed at different times. Defendant's admission of the pleaded facts constituting his persistent status concedes that the proposition is true thus relieving the State of its burden of proof on the matter and relieves the jury from having to make the finding. *See e.g.*, *State v. Lindsey*, 597 S.W.3d 240, 244 (Mo. App. W.D. 2019) (noting a judicial admission is an act done in the course of judicial proceedings that concedes for the purpose of litigation that a certain proposition is true; the admission serves as a substitute for evidence and dispenses with proof of the actual fact; the admission is conclusive on the party for the purpose of the case; and that an admission made by an attorney in open court during trial which is against the interests of his client is presumed to be true and courts are warranted in acting upon that admission). For purposes of Defendant's persistent-offender finding, we see no difference between an admission at a guilty plea and an

15

admission during colloquy with the trial court prior to trial under a Section 558.021 inquiry. *Erlinger* does not require a jury determination in this case.[4]

We deny Point II.

For his final point, Defendant alleges the trial court plainly erred in finding that his prior convictions were committed at different times because the State failed to introduce evidence that established sufficient facts to warrant a finding beyond a reasonable doubt that he was a persistent offender. Defendant concedes he also did not preserve this allegation of error for appellate review. Defendant did not raise this issue in the trial court. Review is for plain error. Rule 30.20; *Brandolese*, 601 S.W.3d at 530.

Section 558.021 mandates that the court shall find a defendant to be a persistent offender if:

> (1) The indictment or information, original or amended, or the information in lieu of an indictment pleads all essential facts warranting a finding that the defendant is a ... persistent offender ...; and
> (2) Evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a ... persistent offender ...; and
> (3) The court makes findings of fact that warrant a finding beyond a reasonable doubt by the court that the defendant is a ... persistent offender....

Section 558.021.1. All subdivisions must be satisfied. *State v. Yount*, 642 S.W.3d 298, 301 (Mo. banc 2022).

Defendant claims the State failed to introduce sufficient evidence that his prior convictions were committed at different times. Defendant criticizes the State's evidence in various respects.

---

[4] We need not address the interplay between *Erlinger* and the Missouri statutes that allow a trial court to determine the facts required to support enhancing a defendant's sentence as a persistent offender. This matter is not at issue in this case and should be addressed by the legislature. This Court will not issue an advisory opinion. Further, Defendant admitted to being convicted of two prior felonies that were committed at different times. Our decision is not inconsistent with *Erlinger*, which acknowledged a defendant can admit to the facts required to increase the prescribed range of penalties.

First, he notes the prior offenses listed in the State's motion and upon which the trial court made its persistent-offender finding were different than those priors pleaded in the indictment. He further notes the indictment did not include the offense conduct date.[5] Next, Defendant claims no evidence of the offense conduct dates was submitted or adduced. He notes the State's motion listed the offense conduct dates as February 17, 1993, and September 30, 1999, but that the State's exhibits did not show the offense conduct dates. Defendant notes that "if no evidence is before the court, there is no foundation upon which to erect a persistent finding." *State v. Emery*, 95 S.W.3d 98, 101 (Mo. banc 2003). Defendant claims such is the case here, as the State adduced no additional evidence about when the offenses occurred, and thus did not show that he met the statutory definition of a persistent offender. Finally, Defendant argues the trial court's persistent-offender finding was based on inaccurate information about the offense conduct date in that the filing date was mistaken for the offense conduct date. Defendant claims the dates represented as the offense conduct dates were actually the indictment dates. Thus, Defendant argues the court's conclusion that the prior offenses were committed at different times was based on the date the cases were filed, not on the date of the offense.

---

[5] The indictment charged that Defendant was a persistent offender based on pleas of guilty entered December 16, 2011, and December 3, 2012, in separate cases. Further, Defendant's point does not include any allegation regarding the sufficiency of the information. Instead it alleges only that the trial court's persistent offender finding was erroneous because the State failed to introduce evidence that established sufficient facts to support the finding. "An appellants point relied on defines the scope of appellate review." *Barnett v. Columbia Maint. Co.*, 632 S.W.3d 396, 409 (Mo. App. E.D. 2021). Claims of error raised in the argument portion of a brief that are not raised in a point relied on are not preserved for our review. *State v. Devore*, 669 S.W.3d 362, 370 (Mo. App. S.D. 2023). Further, Defendant did not develop his claim that the indictment failed to plead an offense conduct date and identified different priors than those on which the trial court based its persistent offender finding to explain the alleged legal significance of these facts. Failure to develop an argument preserves nothing for review. *State v. Seaton*, 628 S.W.3d 424, 430 (Mo. App. W.D. 2021). To the extent Defendant challenges the propriety of the indictment and the State's later motion identifying different offenses to support the persistent offender finding in his argument, his claim is not preserved for review. Rule 84.04(e); *see also*, *Tolu v. Reid*, 639 S.W.3d 504 (Mo. App. E.D. 2021) (declining ex gratia review for arguments raised in the argument portion" of a party's brief that "are not captured in the points relied on ); *State v. Wright*, 376 S.W.3d 696 (Mo. App. E.D. 2012) ("It is not within [the court's] province to speculate about, then decide, arguments which are not asserted or are merely asserted but not developed.").

We decline to address each of Defendant's claims about the evidence of his prior offenses under plain error review. Defendant challenges the sufficiency of the evidence to show the dates of his prior offenses. However, Defendant, without clarification or objection, agreed with the trial court's recitation that he had been convicted of two prior felony offenses committed at different times. "Objections to the sufficiency of proof in connection with prior offenses may be waived by the admission of a defendant or his attorney." *Jones v. State*, 613 S.W.3d 918, 924 (Mo. App. E.D. 2020). "A judicial admission basically waives or dispenses with the production of evidence and concedes for the purpose of the litigation that a certain proposition is true … and is conclusive on the party making it." *State v. Johnson*, 837 S.W.2d 39, 41 (Mo. App. W.D. 1992) (internal quotation omitted). Section 558.021.5 also provides that a defendant may waive proof of the facts alleged. Defense counsel's express acknowledgement on behalf of his client to the trial court – while Defendant was present – that Defendant had two prior convictions for two separate felonies committed on different dates waived Defendant's claim that the State failed to present sufficient evidence to warrant a finding beyond a reasonable doubt that he was a persistent offender. *See Jones*, 613 S.W.3d at 924 (where plea counsel acknowledged the defendant's priors on behalf of his client, the defendant waived any objections to the sufficiency of proof in connection with those prior offenses); *State v. Wheeler*, 439 S.W.3d 241, 245 (Mo. App. W.D. 2014) (the defendant's admission that the prior convictions submitted by the State were accurate and that he was the person referred to therein waived his right to object to the trial court's consideration of such convictions).

Defendant now seeks to avoid his own admission. Relying on federal law, which is not binding on this Court, Defendant argues his statement does not qualify as a judicial admission. *See Heritage Bank v. Redcom Labs.*, 250 F.3d 319, 329 (5th Cir. 2001) (setting out five factors

18

needed for a statement to qualify as a judicial admission). Defendant first argues the trial court's compound question did not help facilitate a clear, unequivocal answer. We find Defendant's response to be clear and unequivocal. The trial court asked whether Defendant agreed that he had two prior convictions – one that occurred in 1993 and one that occurred in 1999. Counsel answered: "He does …." Defendant next argues that his response cannot be a judicial admission because the dates – specifically the 1999 date – was the indictment date and not the offense conduct date and thus was not a fact upon which a persistent finding could have been based. Defendant admitted that he had been convicted of two felony offenses committed at different times – the finding required to be found a persistent offender. Section 558.016 does not require a finding of the specific dates of a defendant's prior offenses; it only requires that the offenses were "committed at different times." Section 558.016.3 (eff. Jan. 1, 2017). The trial court was entitled to rely on Defendant's response and admission. Defendant agreed with the trial court's recitation of the dates on which he committed the prior offenses. We will not convict a trial court of error – plain or otherwise – when Defendant raised no objection at the time and joined in the court's representation. *See, e.g., State v. Gee*, 684 S.W.3d 363, 372-73 (Mo. App. W.D. 2024) (a party cannot complain on appeal about an alleged error in which that party joined or acquiesced); *accord State v. Caves*, 700 S.W.3d 596, 599 (Mo. App. E.D. 2024) (waives plain error review). Defendant's admission that he had been convicted for two prior felonies committed at different times is sufficient to fulfill the requisites of Section 558.021. No substantial grounds exist for believing manifest injustice or a miscarriage of justice has resulted.

We deny Point III.

## Conclusion

We affirm the trial court's judgment.

_____

ANGELA T. QUIGLESS, J.

Thomas C. Clark, II concurs

Renee Hardin-Tammons, Presiding Judge, concurring in separate opinion



# In the Missouri Court of Appeals
# Eastern District

**DIVISION THREE**

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112755 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | |
| SHYHEIM EL-MUMIN, | ) | Honorable Annette Llewellyn |
| | ) | |
| Appellant. | ) | Filed: September 23, 2025 |

**CONCURRENCE**

I write separately to express my unease with the majority's analysis of Point II in equating Appellant's pre-trial admission to admissions made during a guilty plea. However, because I believe Appellant has failed to establish plain error resulting in manifest injustice, I agree that this point should be denied. I therefore respectfully concur in result only on Point II.

The Supreme Court of the United States' decision in *Erlinger v. United States*, 602 U.S. 821 (2024), mandates that any fact that increases the prescribed range of penalties be resolved by a jury, which did not occur here. *Erlinger* relies entirely on the principles guaranteed by the Fifth and Sixth Amendments that "a judge's power to punish would derive wholly from, and remain always controlled by the jury and its verdict," and, accordingly, that "[o]nly a jury may find facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Id*. at

1

832-33 (internal quotations omitted). The Supreme Court has consistently applied these principles and subsequently struck down state statutory sentencing enhancements where a judge has improperly invaded the jury's province by finding additional facts by a preponderance of the evidence that must be resolved by a unanimous jury beyond a reasonable doubt. *Id*. at 833-34; *see also Alleyne v. United States*, 570 U.S. 99 (2013); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

With this in mind, I am concerned with the characterization of Appellant's pre-trial admission of his convictions for two prior felonies as equivalent to an admission during a guilty plea and the subsequent determination that the issue does not need to be decided by a jury for two reasons. First, beyond the simple fact that a pre-trial proceeding is simply not a guilty plea hearing, the Supreme Court in *Erlinger* explicitly states that "[v]irtually any fact that increases the prescribed range of penalties to which a criminal defendant is exposed must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)," *Id*. at 834 (citing *Apprendi*, 530 U.S. at 490) (internal quotations omitted) (emphasis added). The Supreme Court's discussion of such an admission "exception," as characterized by the majority, is limited to only this preceding statement and nothing more. I find it highly unlikely, given the Supreme Court's strict adherence to constitutional protections concerning findings of facts that could trigger sentencing enhancements, despite arguments for efficiency or when such a determination is deemed "straightforward," that the Court intended this brief parenthetical aside to override the crucial need for the jury to nevertheless *resolve* such questions. Indeed, the comparison of the pre-trial admission to a guilty plea proceeding is unsupported by any law, including *Erlinger*, which only briefly references guilty plea admissions, and the majority fails to expound on its comparison. I struggle to support such a finding without further guidance on the matter.

2

Secondly, while Appellant's responses during the pre-trial proceedings may very well resemble a judicial admission, as noted by the majority, in that it "dispenses with the production of evidence and concedes for the purpose of the litigation that a certain proposition is true," *State v. Johnson*, 837 S.W.2d 39, 41 (Mo. App. W.D. 1992), such an admission does not ultimately dispense with the need for the matter to nevertheless proceed to the jury as the proper factfinder for final resolution. Rather, judicial admissions, as discussed by the majority in their resolution of Point III, more closely relate to the evidentiary burden of the State in proving their case.

I am troubled that the circuit court here impermissibly assumed the jury's factfinding function for itself, an act specifically condemned by the Supreme Court as an intrusion on a power the Fifth and Sixth Amendments reserve to the American people as jurors.[1] *See Erlinger*, 602 U.S. at 842 ("a criminal defendant enjoys the right to hold the government to the burden of proving its case beyond a reasonable doubt to a unanimous jury of his peers 'regardless of how overwhelming' the evidence may seem to a judge.").

However, even though the trial court erred in failing to submit Appellant's persistent offender status to the jury for determination, Appellant has failed to establish that such error resulted in manifest injustice necessary for reversal under the plain error standard of review.

---

[1] The pre-trial proceedings of the State's motion for prior and persistent offender status and the circuit court's ruling on the motion reads in full:
THE COURT: I have a motion for a finding pursuant to section 558.021, and proposed order. This motion is regarding a prior and persistent offender finding. [Defense Counsel], anything on this motion?
DEFENSE COUNSEL: No, Your Honor.
THE COURT: So, does Mr. El-Mumin agree that he has these two prior convictions, one from June 20th of 1994, for the offense of robbery in the second degree, which occurred on February 17th in 1993, and also, May 20th 2000, a guilty plea on robbery in the first degree for conduct that occurred on September 30th, 1999, and that at that time, he was represented by counsel on both cases, and also at the time, his former name was [redacted]? Would you agree to that, [Defense Counsel]?
DEFENSE COUNSEL: He does, Your Honor.
THE COURT: All right. So the court will find that Mr. El-Mumin is a prior and persistent offender pursuant to section 558.016. In the event that after a jury trial, there is a finding of guilt, the court, not the jury, will assess punishment, as provided for in sections 557.036 and 558.016.

Generally, "[a] properly-preserved federal constitutional error in a criminal trial does not require reversal and remand for a new trial if the reviewing court determines that the error was harmless beyond a reasonable doubt." *State v. Minner*, 256 S.W.3d 92, 96 (Mo. banc 2008); *see also Neder v. United States*, 527 U.S. 1, 8 (1999). However, because Appellant's claim is not preserved, he must further prove that not only was the outcome more than harmless error, but that it resulted in manifest injustice, meaning that the error was outcome determinative, in order for this Court to reverse. *State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022).

Here, even had the jury rather than the judge acted as the factfinder for Appellant's persistent offender status, the record facially establishes that Appellant's prior felonies met the requirements of Section 558.016 for persistent offender status, in that he had previously been found guilty of two or more felonies committed at different times. Section 558.016.2. "Courts may infer that prior felonies were committed at different times when the record supports a finding beyond a reasonable doubt that the prior felonies were committed at different times." *State v. Johnson*, 402 S.W.3d 182, 188 (Mo. App. E.D. 2013).

In its motion pursuant to Section 558.021, the State attached the Case.net records of Appellant's prior convictions, committed in 1993 and 1999, and asked the court to take judicial notice of the convictions. [2] Appellant never disputed his convictions or argued that the convictions did not occur at different times pursuant to the requirements of the statute. [3] Thus,

---

[2] The State sought admission of the records as evidence pursuant to Section 490.130, which provides that "[r]ecords of proceedings of any court of this state contained within any statewide court automated record-keeping system established by the supreme court shall be received as evidence of the acts or proceedings in any court of this state without further certification of the clerk, provided that the location from which such records are obtained is disclosed to the opposing party." Section 490.130.

[3] I acknowledge and agree with the majority's determination that *Erlinger* does not create new law, but rather reiterates the rules already established in *Apprendi* and *Alleyne*, and therefore Appellant could have objected to the court's determination of persistent offender status at the time of trial rather than for the first time on appeal. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013).

4

because Appellant has not shown that, had the prior convictions been properly presented to the jury, he would not have been found to be a persistent offender pursuant to Section 558.016, he has not sufficiently proven that the error amounted to more than harmless error or resulted in manifest injustice necessary for this court to reverse. I therefore agree with the majority's result in denying Point II.

For the foregoing reasons, I respectfully concur in result only on Point II.

Renée D. Hardin-Tammons, P.J.